IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TINDLE ENTERPRISES, INC.,
*A Florida Corporation,*

    Plaintiff,

v.                                 CASE NO.   3:09cv86/RV/EMT

PLASTIC TRENDS, INC.,
*A Foreign for Profit Corporation,*

    Defendant.
_____/

## ORDER

Now pending is the defendant's motion to dismiss the plaintiff's amended complaint (doc. 17).

**I.    Background**

On April 15, 2009, I entered an order granting the defendant's motion to dismiss the plaintiff's original complaint (doc. 14), and the order is incorporated herein. In short, the defendant manufactures and sells polyvinyl chloride (PVC) fittings and pipe used for sewer system infrastructure. The plaintiff is in the construction business and, as relevant here, was contracted to install sewage line infrastructure for a residential subdivision in Santa Rosa County, Florida. At some point, the plaintiff purchased the defendant's product and installed the fittings in the subdivision's sewer lines.[1] During air testing of the sewer lines, it was learned that the pipe fittings had developed stress cracks and would need to be replaced.

The plaintiff filed an action against the defendant in state court, alleging: (1) breach of implied warranty of merchantability, and (2) manufacturing defect/strict

---

[1] The original complaint was silent as to whether the plaintiff purchased the pipe fittings directly from the defendant or from a third party. In its response in opposition to defendant's pending motion to dismiss, the plaintiff now concedes that it did not buy the product from the defendant. *See* doc. 20 at 3 (stating that "TEI did not negotiate nor did it have a contract with the Defendant").

liability. With respect to damages, the plaintiff claimed that the pipe fittings had to be replaced at its own expense. The case was removed to this federal court on the basis of diversity jurisdiction, and the defendant moved to dismiss on two grounds: first, that the claim for breach of warranty must fail because the contract did not allege privity of contract between the parties; and second, that the strict products liability claim must fail on the basis of the economic loss rule. I ultimately held that:

> [B]oth defendant's arguments have merit and the motion to dismiss must be granted. However, I will allow the plaintiff an opportunity to attempt to amend the complaint to comply with this order. If there is privity and/or personal injury or property damage, it should be easy for the plaintiff to amend and plead such facts. If not, then that should be the end of this case. Accordingly, the dismissal will be without prejudice.

The plaintiff thereafter timely filed an amended complaint. It abandoned the breach of warranty claim --- impliedly conceding that there was no privity between the parties --- but it retained the products liability count. With respect to damages, the amended complaint alleges that the plaintiff not only had to replace the defective pipe fittings themselves, but it also "was required to pay for extra labor and materials to dig up curbing, remove and replace adjacent stormwater and water piping in order to gain access to the defective fittings." Furthermore, the plaintiff claims it was damaged "when the owners of [the subdivision] withheld in excess of $300,000.00 as delay and punitive damages as a result of the fitting failures." The defendant moves to dismiss once again, contending that the products liability claim, as amended, is still barred by the economic loss rule.

## II.     Motion to Dismiss Standard

In deciding the defendant's motion, I am confined to the four corners of the complaint and must take the factual claims therein as true and view them in the light most favorable to the plaintiff. *See, e.g., Erickson v. Pardus,* 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007); *Bickley v. Caremark RX, Inc.,* 461 F.3d 1325, 1329 n.7 (11th Cir. 2006); *Murphy v. Federal Deposit Ins. Corp.,* 208 F.3d 959, 962 (11th Cir. 2000). The Federal Rules of Civil Procedure do not require plaintiffs to set out in

detail the facts upon which they base their claims. Rule 8(a) only requires a "short and plain statement" showing that the pleader is entitled to relief. Nevertheless, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *accord Watts v. Florida Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007). "The Supreme Court's most recent formulation of the pleading specificity standard is that 'stating such a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Watts, supra,* 495 F.3d at 1295 (quoting *Twombly,* 550 U.S. at 556). This rule does not "impose a probability requirement at the pleading stage." *Twombly,* 550 U.S. at 556. Rather, the test for stating a claim is whether the complaint "succeeds in 'identifying facts that are suggestive enough to render [the required element] plausible.'" *Watts, supra,* 495 F.3d at 1296 (quoting *Twombly,* 550 U.S. at 556).

### III. Discussion

The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are "economic losses," which are essentially disappointed economic expectations. *See Indemnity Ins. Co. of N. America v. American Aviation, Inc.,* 891 So.2d 532, 536 (Fla. 2004). This rule is based upon the notion that contract principles, rather than tort principles, are more appropriate to resolve purely economic claims. *See Florida Power & Light Co. v. Westinghouse Elec. Corp.,* 510 So.2d 899, 900-01 (Fla. 1987). In Florida, which is the state law applicable in this diversity case, the economic loss rule has been applied in two different circumstances. "The first is when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract." *Indemnity Ins. Co. of N. America, supra,* 891 So.2d at 536. Because it is now undisputed that there is no privity between the parties in this case, the first circumstance is not applicable here.

The second circumstance, known as the products liability economic loss rule, applies to manufacturers or distributors and "expressly limit[s] tort liability with respect to

defective products to injury caused to persons or damage caused to property other than the defective product itself." *Id.* at 541. Thus, "a manufacturer or distributor in a commercial relationship has no duty beyond that arising from its contract to prevent a product from malfunctioning or damaging itself." *Id.* at 542. Economic loss has generally been defined as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits." *Casa Clara Condo. Assoc., Inc. v. Charley Toppino and Sons, Inc.,* 620 So.2d 1244, 1246 (Fla. 1993). More broadly, it is the plaintiff's "loss of the 'benefit of his bargain.'" *Indemnity Ins. Co. of N. America, supra,* 891 So.2d at 536 n.1.

As noted above, the plaintiff alleged in its original complaint that it suffered damages as it was required to remove the defective pipe fittings and replace them at its own expense. I dismissed the claim as it clearly fell within the economic loss rule. The plaintiff now alleges that it suffered additional damage to "other property" because it was required "to dig up curbing" and remove and replace adjacent piping to gain access to the defective fittings. Notably, however, plaintiff does not allege that it owned this "other property." *See Airport Rent-A-Car, Inc. v. Prevost Car, Inc.,* 67 F.3d 901 (11th Cir. 1995) (affirming district court decision to apply the economic loss rule where, *inter alia*, the plaintiff "did not assert an ownership interest" in the other property damaged by the defective product). In any event, even if it is assumed that the plaintiff had a valid ownership interest in the adjacent property, I conclude that the damage constitutes "costs of repair and replacement of the defective product." *See generally Florida Power & Light Co. v. McGraw Edison Co.,* 696 F. Supp. 617 (S.D. Fla. 1988), *aff'd* 875 F.2d 873 (11th Cir. 1989) (economic loss rule applied even though plaintiff claimed that, in addition to the defective product itself, there was additional damage done to the concrete wall and concrete curbing adjacent to that product); *McDonough Equip. Corp. v. Sunset Amoco West, Inc.,* 669 So.2d 300 (Fla. 3d DCA 1996) (additional costs to remove and clean up surrounding area contaminated as a result of ruptured fuel line

insufficient to remove the bar of the economic loss rule).[2] The plaintiff also claims that the economic loss rule should not apply because the owners of the subdivision withheld $300,000 from payment as a result of the fitting failure. But, this "consequent loss of profits" and "loss of the 'benefit of [its] bargain'" constitute disappointed economic expectations (within contract law) and thus plainly falls within the economic loss rule.

## IV.   Conclusion

For the above-stated reasons, the defendant's motion to dismiss (doc. 17) is GRANTED, and the amended complaint is hereby DISMISSED.

DONE AND ORDERED this 11th day of June, 2009.

/s/ *Roger Vinson*
**ROGER VINSON**
**Senior United States District Judge**

---

[2] The plaintiff seeks to distinguish *Florida Power & Light Co.* and *McDonough Equip. Corp.* by pointing out that the plaintiffs in both cases had directly contracted with the defendants, and, consequently, "the parties could protect themselves through contract and therefore a tort claim was inapplicable." By this, the plaintiff appears to be suggesting that the plaintiffs in those other cases were barred from pursuing tort claims because they had direct remedies against the defendants in contract, a circumstance not present here since the plaintiff did not buy the pipe fittings directly from the defendant. However, the economic loss rule "applies even in the absence of privity of contract." *Indemnity Ins. Co. of N. America, supra,* 891 So.2d at 541; *accord, e.g., Airport Rent-A-Car, Inc. v. Prevost Car, Inc.,* 660 So.2d 628, 631 (Fla. 1995); *Casa Clara Condo. Ass'n, Inc., supra,* 620 So.2d at 1248; *Sfc Valve Corp. v. Wright Mach. Corp.,* 883 F. Supp. 710, 716 (S.D. Fla. 1995) ("'A plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort, *regardless of the plaintiff's inability to recover under an action in contract*.'") (citation omitted; emphasis added). Further, the plaintiff here may presumably recover against the seller of the product. *See, e.g., Airport Rent-A-Car, Inc. v. Prevost Car, Inc.,* 788 F. Supp. 1203, 1206 (S.D. Fla. 1992) (economic loss rule held to bar claim against manufacturer of defective product even though it deprived the plaintiff of a remedy against that particular defendant; noting that plaintiff had an alternate remedy and "may seek recovery for the loss . . . from the seller"). But, even if the plaintiff does not otherwise have a remedy against the seller, the economic loss rule would still bar the claim here. *See generally Airport Rent-A-Car, Inc., supra,* 660 So.2d at 628 (expressly rejecting a "no alternative theory of recovery exception" to the economic loss rule).

*Case No. 3:09cv86/RV/EMT*